Sutlirr, J.,
dissenting.
It is not claimed, in this case, that the wrongful taking of goods from the owner by one having no right to them, by means of a false affidavit, deprives the rightful owner of his title. Nor is it pretended that the judgment for damages in replevin has any other effect than would adjudgment in trespass for wrongfully taking goods from the rightful owner. It is admitted that in neither case would the judgment, without actual satisfaction, divest the rightful owner of his title.. There remains, then, only one means—to wit, the giving of the bond—by which it can bo pretended that the title to the property, found by the jury to be in Smith, can be claimed to have been taken from him and vested in the plaintiffs in replevin. I do not perceive how the title of Smith could be thereby divested. The bond is only designed as security for the payment of the judgment, and it can only be used for that purpose. If it were of itself payment, no execution could be issued on the judgment.
Indeed, I find nothing expressed in the statute favoring a construction that any proceeding under the'statute, short of satisfaction of the judgment for its value, can possibly operate to divest the rightful owner of the property and vest the title in the wrong-doer, who, by the record, stands convicted of having wrongfully obtained possession thereof from the rightful owner.
The statute provides that if any person shall wrongfully detain' the goods and chattels of another, the owner, his agent, or attorney, may file a prajcipe, affidavit, etc.; and thereupon may have the goods so described replevied by the sheriff. See Chase’s Stat. 1722.
The object of the statute, as expressed, is to give the possession of the chattel to the party legally entitled to the possession ; and that right of possession is all that the action necessarily settles. Thus, not only may the general owner maintain the action, but a bailee may also maintain the action even against the general owner.
Nor can I perceive that the fact of the legislature having provided that the plaintiff, prior to having this summary possession of the chattel on an ex parte application, shall give security to the other party to make good his claim, the same as is required in the *386 allowance of provisional injunctions *and other summary «orders preliminary to a trial, in anywise affects the title in con■troversy.
Again, if the statute were susceptible of such interpretation, or •even if its language admitted of no other construction, I am unable «to see how such effect can be given to it consistent with the constitutional provision, under which enacted, that “ private property ought, and shall evet be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the «owner.” Article 8, section 4, Constitution of 1802. Under this provision of the constitution it has, I believe, been uniformly held by this court, that unless a statute, by which one’s property is taken for public use, provides means by which comjiensation may with certainty be obtained, the statute is void. McArthur v. Nelly et al., 5 Ohio, 143; Foot v. Cincinnati, 11 Ohio, 408. It has also been uniformly held that the compensation for the injury actually sustained must be made in money. Brown v. Cincinnati, 14 Ohio, 175. If, then, the legislature, in the exercise of the right of eminent domain, can not, in any exigency, take from an individual his right of property for public use, I confess I am unable to see -how, even under the potent plea of public policy, we can, in the .absence of any statutory express provision, by mere construction, transfer one’s title to his property, solemnly adjudicated to be good, ;to the wrong-doer, shown, by the same record, to have no right to .the property.